Filed 11/16/20; See concurring opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| In re | B303744 |
|---|---|
| | (Los Angeles County |
| MICHAEL WILLIAMS, | Super. Ct. No. MA003279) |
| | |
| on Habeas Corpus. | |

ORIGINAL PROCEEDING; petition for writ of habeas corpus. Superior Court of Los Angeles County, Daniel B. Feldstern, Judge. Petition denied.

Joshua L. Siegel, under appointment by the Court of Appeal, for Petitioner.

Xavier Becerra, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Amanda J. Murray and Charles Chung, Deputy Attorneys General, for Respondent.

_____

# I.

## *INTRODUCTION*

Petitioner Michael Williams was 21 years old when he shot and killed two men during a robbery.  A jury convicted him of two counts of first degree murder (Pen. Code, § 187, subd. (a))[1] and found true the allegation that he personally used a firearm in the commission of the robbery (§ 12022.5, subd. (a)).  It also found true the special circumstance allegations that he committed multiple murders (§ 190.2, subd. (a)(3)) and murder during the commission of robbery (§ 190.2, subd. (a)(17)).  A court sentenced him to two consecutive terms of life without the possibility of parole (LWOP).  We affirmed the conviction and sentence on direct appeal.  (*People v. Williams* (Aug. 21, 1995, B083327) [nonpub. opn.].)

Petitioner, self-represented at the time, filed a petition for writ of habeas corpus on January 21, 2020.  He asserted that the denial of a youth offender parole hearing under section 3051 violates his right to equal protection of the laws and constitutes cruel and unusual punishment.  Under section 3051, subdivision (b), most inmates under age 26 at the time of their "controlling offense" become eligible for a youth offender parole hearing in their 15th, 20th, or 25th year of incarceration.[2]  The different statutory parole hearing dates depend on the offense.  (§ 3051, subd. (b).)  Section 3051, subdivision (h) is the exception to the rule.  It excludes from youth offender parole hearings offenders,

---

[1]     All statutory citations are to the Penal Code.

[2]     The " '[c]ontrolling offense' " is "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment."  (§ 3051, subd. (a)(2)(B).)

2

like petitioner, who are serving LWOP sentences for offenses committed "after the person had attained 18 years of age." (*Ibid.*)

We appointed counsel for petitioner and issued an order to show cause. We now deny the petition.

## II.
## *DISCUSSION*
### A. *Youth Offender Parole Hearings*

Youth offender parole hearings under section 3051 were established by the Legislature in 2013, following a series of United States and California Supreme Court cases addressing the constitutionality of lengthy prison sentences for juvenile offenders. In *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), the United States Supreme Court had held the Eighth Amendment prohibits states from imposing an LWOP sentence on a juvenile convicted of a nonhomicide offense. (*Graham,* at pp. 74-75.) Two years later, in *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*), the Supreme Court held the Eighth Amendment prohibits *mandatory* LWOP sentences for juveniles, regardless of the crime, including murder. (*Miller,* at p. 479.)

The holdings in the two cases were founded on the diminished culpability of juveniles and their greater prospects for reform. Both cases relied on earlier similar findings in *Roper v. Simmons* (2005) 543 U.S. 551 (*Roper*), which declared the death penalty for juveniles unconstitutional. Citing brain science and psychological studies, *Graham* and *Miller*, like *Roper*, were predicated on the accepted differences between adult and juvenile offenders. Children have a " ' "lack of maturity and an underdeveloped sense of responsibility," ' leading to recklessness, impulsivity, and heedless risk-taking." (*Miller, supra,* 567 U.S. at p. 471.) They " 'are more vulnerable . . . to negative influences

3

and outside pressures,' " have limited " 'contro[l] over their own environment,' " and "lack the ability to extricate themselves from horrific, crime-producing settings." (*Ibid*.) And because "a child's character is not as 'well formed' as an adult's[,] his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].' " (*Ibid*., first brackets added.) These characteristics mean a juvenile offender is both less culpable and more likely to rehabilitate than an adult offender. For that reason, states are required to provide juvenile offenders with a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Graham*, *supra,* 560 U.S. at p. 75.)

In *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), the California Supreme Court extended *Graham* and *Miller*'s reasoning to a juvenile sentenced to 110 years to life in prison for nonhomicide crimes. Although Caballero did not receive a literal LWOP sentence, he would not have been eligible for parole for over 100 years, effectively giving him no "meaningful opportunity" to " 'demonstrate growth and maturity' " and thereby secure release during his natural lifespan. (*Caballero,* at p. 268.) The *Caballero* court held the 110-years-to-life sentence unconstitutional and urged the Legislature "to enact legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity." (*Id*. at p. 269, fn. 5.)

The following year, the Legislature enacted section 3051 to address "the situation, the subject of *People v. Caballero*, in which a youth is sentenced to life-with-the-possibility of parole, which may serve as a de facto life sentence." (Assem. Com. on

4

Appropriations, Analysis of Sen. Bill No. 260 (2013-2014 Reg. Sess.) as amended Aug. 12, 2013, p. 2.) Juveniles sentenced to LWOP, however, were not included in the bill's provisions because the Legislature believed the law already provided a remedy for those offenders: Under section 1170, subdivision (d)(2), inmates who were under age 18 at the time of their crimes and sentenced to LWOP could petition the court for resentencing after 15 years. (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 260 (2013-2014 Reg. Sess.) as amended Aug. 12, 2013; see also § 1170, subd. (d)(2).)[3]

Effective January 1, 2016, section 3051's provisions were extended to offenders who were under age 24 at the time of their offenses. (Stats. 2015, ch. 471, § 1 (Sen. Bill No. 261).) Two years later, they were further extended to include offenders who were under age 26 when they committed their crimes. (Stats. 2017, ch. 675, § 1 (Assem. Bill No. 1308); see also § 3051, subd. (a)(1).) In doing so, the Legislature cited "[r]ecent neurological research show[ing] that cognitive brain development continues well beyond age 18 and into early adulthood." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 261 (2015-2016 Reg. Sess.) as amended July 1, 2015, p. 1; see also Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1308 (2017-2018 Reg. Sess.) as amended Mar. 30, 2017.)

In 2016, the United States Supreme Court held in *Montgomery v. Louisiana* (2016) 577 U.S. __[136 S.Ct. 718] (*Montgomery*) that *Miller*'s prohibition against mandatory LWOP sentences for juvenile offenders is retroactive. Concerned that its

---

[3] Section 1170, subdivision (d)(2) is not a youth offender parole hearing statute. It provides for resentencing of juveniles when certain conditions are satisfied.

5

retroactive application of *Miller* would result in mandatory resentencing of large numbers of inmates, the *Montgomery* court advised of an alternative. "Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." (*Montgomery,* at p. 736.)

Shortly after the Supreme Court issued its opinion in *Montgomery*, the Court of Appeal in *In re Berg* (2016) 247 Cal.App.4th 418, 438-439 (*Berg*) held the resentencing procedure in section 1170, subdivision (d)(2) failed to provide an adequate remedy for juvenile offenders serving LWOP sentences. For some, the statute did not comport with *Miller,* for others the statute did not apply at all. (*Berg,* at pp. 438-439.)[4]

It was in response to *Montgomery* and *Berg* that the Legislature once again amended section 3051 to extend youth offender parole hearings, for the first time, to inmates sentenced to LWOP for crimes committed before age 18. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 394 (2017-2018 Reg. Sess.) Feb. 15, 2017.) The senate bill analysis states that the legislation "clarifies that it does not apply to those with a life without parole sentence who were older than 18 at the time of his

---

[4] The *Berg* court expressly declined to follow a then existing Court of Appeal opinion, *In re Kirchner* (2016) 244 Cal.App.4th 1398, which held that section 1170, subdivision (d)(2) provided an adequate remedy under *Miller* and *Montgomery*. The Supreme Court granted review in *Kirchner* and reversed, holding "that section 1170(d)(2) does not provide an adequate remedy at law for *Miller* error." (*In re Kirchner* (2017) 2 Cal.5th 1040, 1043.)

or her controlling offense." (*Id.* at p. 2.) The amendment thus did not provide any relief to petitioner who had committed an LWOP offense after he had attained 18 years of age.

## B.    *Equal Protection*

Petitioner's first contention is that his sentence violates the constitutional right to equal protection of the laws. We begin our analysis accordingly. "The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee all persons the equal protection of the laws. To succeed on an equal protection claim, [petitioner] must first show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. [Citation.] . . . [¶] Where a class of criminal defendants is similarly situated to another class of defendants who are sentenced differently, courts look to determine whether there is a rational basis for the difference. [Citation.]" (*People v. Edwards* (2019) 34 Cal.App.5th 183, 195 (*Edwards*).) "[E]qual protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' [Citation.] . . . This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' [Citations.]" (*People v. Turnage* (2012) 55 Cal.4th 62, 74-75.) So long as there is "any reasonably conceivable state of facts that

7

could provide a rational basis" for the disparity, "[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law." (*Id*. at p. 74.)

The first step in the equal protection analysis is to determine whether two groups are similarly situated. The question " 'is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citation.]" (*People v. Brown* (2012) 54 Cal.4th 314, 328; see also *Edwards, supra,* 34 Cal.App.5th at p. 198.) Petitioner argues there he, as an adult criminal under age 26 convicted of LWOP offenses, is similarly situated to adult criminals under the age of 26 who are sentenced to non-LWOP terms.

Section 3051 was originally enacted to remedy the constitutional challenges to *de facto* LWOP sentences for juvenile offenders. The Legislature's focus was no longer on juveniles when it first extended section 3051 to certain crimes committed by adults under 24 years old and later to adults under 26. The legislative history suggests the Legislature was motivated by dual concerns: that lengthy life sentences did not adequately account for, first, the diminished culpability of youth, and second, youthful offenders' greater potential for rehabilitation and maturation.

The author of Assembly Bill No. 1308, which expanded youth offender parole hearings to non-LWOP inmates under age 26 at the time of their crimes, explained the change " 'would align public policy with scientific research. . . . Scientific evidence on adolescence and young adult development and neuroscience shows that certain areas of the brain, particularly those affecting judgment and decision-making, do not develop until the early-to-

8

mid-20s.  Research has shown that the prefrontal cortex doesn't have nearly the functional capacity at age 18 as it does at 25. The prefrontal cortex is responsible for a variety of important functions of the brain including:  attention, complex planning, decision making, impulse control, logical thinking, organized thinking, personality development, risk management, and short-term memory.  *These functions are highly relevant to criminal behavior and culpability*.' "  (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1308 (2017-2018 Reg. Sess.) as amended Mar. 30, 2017, p. 2, italics added.)  The bill's author also noted a second consideration—that " 'motivation to focus on rehabilitation has increased' " following section 3051's enactment. (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1308 (2017-2018 Reg. Sess.) as amended Mar. 30, 2017, p. 3.) " 'An offender is more likely to enroll in school, drop out of a gang, or participate in positive programs if they can sit before a parole board sooner, if at all, and have a chance of being released.' " (*Ibid*.)

Petitioner argues, and we are inclined to agree, that youth offenders sentenced to LWOP and those sentenced to a parole-eligible life terms are similarly situated with respect to the Legislature's second goal—*i.e.*, to account for youthful offenders' potential for growth and rehabilitation.  Applying the legislative findings, one could say that both groups committed their crimes before their prefrontal cortexes reached their full functional capacity, when their characters were not yet fully formed.  Both groups are equally likely to demonstrate improved judgment and decision-making as they reach emotional and cognitive maturity.

We disagree, however, that youth offenders sentenced to LWOP and those youth offenders sentenced to parole-eligible life

9

terms are similarly situated with respect to the Legislature's first goal, which is to calibrate sentences in accordance with youthful offenders' diminished culpability. While a 21-year-old *special circumstance* murderer may, in fact, have diminished culpability compared with a 28 year old who commits the same crime, he is nonetheless *more* culpable and has committed a more serious crime than a 21 year old convicted of a *nonspecial circumstance* murder. (See *People v. Descano* (2016) 245 Cal.App.4th 175, 182 [" 'Persons convicted of *different* crimes are not similarly situated for equal protection purposes. [Citations.]' (*People v. Macias* (1982) 137 Cal.App.3d 465, 473.)"]; *People v. Pecci* (1999) 72 Cal.App.4th 1500, 1503 ["[p]ersons convicted of different offenses can be punished differently"]; see also *In re Jones* (2019) 42 Cal.App.5th 477, 481-482.)[5]

---

[5]     In passing, petitioner also suggests he is similarly situated to juveniles sentenced to LWOP. We disagree. As originally enacted and first modified, section 3051's purpose was to reform actual and virtual life sentences meted out to juvenile offenders to bring them within the federal constitutional limits expressed in *Graham*, *Miller*, *Montgomery*, and *Caballero*. None of these opinions extends constitutional limits on life punishments to adults, even when those adults are just over the age of 18 at the time of their crimes. The court's language in *Miller* is clear: "children are constitutionally different from adults for purposes of sentencing." (*Miller, supra,* 567 U.S. at p. 471.) This age demarcation is neither advisory nor convenient. It is constitutional. Having passed that demarcating line when he committed double murder, petitioner—unlike juveniles who commit the same crimes—is constitutionally eligible for an LWOP sentence. (See *In re Jones, supra,* 42 Cal.App.5th at p. 482.) He is not similarly situated to juveniles sentenced to LWOP.

10

Where two groups of individuals are not similarly situated for purposes of the law being challenged, we need not proceed to the next step of the equal protection analysis. (*People v. Moreno* (2014) 231 Cal.App.4th 934, 941-942.) However, even if we assume petitioner is similarly situated to non-LWOP indeterminately-sentenced youth offenders aged 18 to 25, we still would find no equal protection violation.

" '[E]qual protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' [Citation.]" (*People v. Williams* (2020) 47 Cal.App.5th 475, 489.) So long as there is " ' "any reasonably conceivable state of facts that could provide a rational basis" ' " for the disparity, "[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law." (*People v. Turnage, supra,* 55 Cal.4th at p. 74.)

The Legislature has prescribed an LWOP sentence for only a small number of crimes. These are the crimes the Legislature deems so morally depraved and so injurious as to warrant a sentence that carries no hope of release for the criminal and no threat of recidivism for society. In excluding LWOP inmates from youth offender parole hearings, the Legislature reasonably could have decided that youthful offenders who have committed such crimes—even with diminished culpability and increased potential for rehabilitation—are nonetheless still sufficiently culpable and sufficiently dangerous to justify lifetime incarceration.

In this case, petitioner was convicted of special circumstance multiple murder. The crime carries a mandatory sentence of LWOP or death (§ 190.2, subd. (a)), which are the harshest penalties available under our penal system and are

11

reserved for crimes of the most heinous nature.[6]  (See *In re Nunez, supra,* 173 Cal.App.4th at p. 728 [describing special circumstance murders as "the most heinous acts" proscribed by law].)  The Legislature rationally judged this crime to be more severe and more deserving of lifetime punishment than nonspecial circumstance first-degree murder.  This judgment is "both the prerogative and the duty of the Legislature" and "[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic" of that judgment. (*People v. Turnage*, *supra*, 55 Cal.4th at p. 74.)[7]

---

[6]    Individuals who commit certain kidnapping crimes are also subject to an LWOP sentence.  (See § 209, subd. (a).)  In *In re Nunez* (2009) 173 Cal.App.4th 709, 715, the Court of Appeal found the punishment constituted cruel and unusual punishment in a case involving a defendant who was under 16 years old.  We express no opinion on the constitutionality of LWOP sentences for kidnapping imposed on a youthful offender like petitioner.

[7]    In its recent opinion in *People v. Montelongo* (Oct. 15, 2020, B294095) ___ Cal.App.5th ___ [2020 WL 6074456], the court refused to address the 18-year-old defendant's argument that his LWOP sentence deprived him of equal protection.  The court held the point had been waived because the argument was first made in defendant's reply brief.  (*Id*. at *6, fn. 8.)  Justice Segal's concurring opinion includes both cruel and unusual punishment and equal protection considerations.  "In his concurring opinion in [*In re*] *Jones*, *supra*, 42 Cal.App.5th 477[], Justice Pollak, joined by one of his colleagues, suggested that section 3051 may deny equal protection to defendants who, like Montelongo, are similarly situated to other 18 to 25 year olds for purposes of determining whether their brains are capable of outgrowing 'the youthful impulses that led to the commission of their offenses,' but who are nonetheless denied access to a youthful offender

**C.** *Cruel and Unusual Punishment*

Petitioner argues that his LWOP sentence violates the Eighth Amendment because it is grossly disproportionate to his culpability. We consider his argument in terms of whether the sentence is grossly disproportionate to the two special circumstances murders petitioner committed, and whether LWOP is grossly disproportionate for any youthful offender.

      1.      <u>Cruel and Unusual Punishment as to Petitioner</u>

"[E]ven if sentenced to a life-maximum term, no prisoner can be held for a period grossly disproportionate to his or her individual culpability for the commitment offense. Such excessive confinement . . . violates the cruel or unusual punishment clause (art. I, § 17) of the California Constitution." (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1096 (*Dannenberg*), overruled on other grounds in *In re Lawrence* (2008) 44 Cal.4th 1181, 1191.) Whether a sentence is "grossly disproportionate" to an offense is measured by "circumstances existing at the time of the offense." (*In re Rodriguez* (1975) 14 Cal.3d 639, 652.)

---

parole hearing because they were sentenced to life without the possibility of parole instead of a sentence with the possibility of parole. (See *Jones*, at pp. 485-486, [] (conc. opn. of Pollak, J.).)" (*Id.* at *12, fn. 3.) The *Montelongo* concurrence continued, "And yet we are stuck with the line that the United States Supreme Court drew at 18 years old in *Roper*[, *supra*, 543 U.S. 551] in 2005 and that the Legislature imported into section 3051. (See *Roper*[ ], at p. 574; § 3051, subd. (b)(4); court's opn., *ante*, at pp. ___ – ___].) Whether and where the Legislature should draw a new line in section 3051 is not for us to say, but it may be time for the Legislature to rethink the old *Roper* line." (*Montelongo,* at *12, fn. 3.)

" '[A] petitioner attacking his sentence as cruel or unusual must demonstrate his punishment is disproportionate in light of (1) the nature of the offense and defendant's background, (2) the punishment for more serious offenses, or (3) punishment for similar offenses in other jurisdictions.' [Citation.]" (*In re Palmer* (2019) 33 Cal.App.5th 1199, 1207, review granted July 31, 2019, S256149; see also *People v. Mendez* (2010) 188 Cal.App.4th 47, 64-65.)

Petitioner argues an LWOP sentence for the crime he committed is grossly disproportionate to his diminished culpability as a 21-year-old offender. He maintains that he is less culpable than a mature adult who commits the same crimes, and yet both he and the mature adult will serve the same LWOP sentence if he is not granted a youth offender parole hearing. In fact, because he was younger at the time of incarceration, it is likely he will serve a *longer* sentence than the mature adult, despite the latter's greater culpability. We conclude that petitioner's LWOP sentence is not grossly disproportionate to the two special circumstances murders he committed.

With the exception of death, LWOP is the most severe penalty available under our Penal Code. As a result, it necessarily encompasses a range of conduct, all among the most deplorable crimes prescribed by law, but some still more deplorable than others. Some LWOP inmates may be more culpable than other LWOP inmates. However, the Eighth Amendment does not require us to finely calibrate sentences among inmates. (See *Graham, supra*, 560 U.S. at p. 60; *Harmelin v. Mich.* (1991) 501 U.S. 957, 996-1005 (conc. opn. of Kennedy, J.); *In re Coley* (2012) 55 Cal.4th 524, 542.) Courts need not rank every convicted defendant on a continuum of

culpability and ensure each of their sentences are precisely matched to their particular culpability as compared to another defendant's culpability. (See *People v. Mincey* (1992) 2 Cal.4th 408, 476 ["intercase" proportionality review not required].) Rather, the Eighth Amendment prohibits only sentences that are *grossly* disproportionate to an individual's crime. Our Supreme Court has cautioned this limitation "will rarely apply to those serious offenses and offenders currently subject by statute to life-maximum imprisonment." (*Dannenberg, supra,* 34 Cal.4th at p. 1071.)

Even assuming petitioner's diminished culpability as a 21 year old, the constitutional limitation has not been reached here. Petitioner shot and killed two people with a .22-caliber bolt action rifle in the course of a robbery. He admitted to a fellow inmate that he shot one of the victims because the victim recognized him, and then shot the other victim as he turned to run away. Petitioner then took one of the victim's credit cards and used it at least 10 times before his arrest. (*People v. Williams*, *supra,* B083327.)

The United States and California Supreme Courts have recognized there is no crime more depraved or more injurious than intentional first-degree murder. (See *People v. Contreras* (2018) 4 Cal.5th 349, 382 [nonhomicide crimes " 'may be devastating in their harm, . . . but "in terms of moral depravity and of the injury to the person and to the public," they cannot be compared to murder in their "severity and irrevocability." ' (*Kennedy v. Louisiana* (2008) 554 U.S. 407, 438.)"].) This is doubly true in the case of a double murder, even when committed by a 21 year old. (See *People v. Garnica* (1994) 29 Cal.App.4th 1558, 1563 [in case involving a multiple murder special

15

circumstance finding, "*[e]ach* of the murders is deemed the more heinous because it is one of *multiple* killings"].) In light of the severity of this crime and the magnitude of the harm inflicted, we cannot say that an LWOP sentence is "grossly disproportionate" to petitioner's culpability.

    2.    <u>Cruel and Unusual Punishment as to any 21 year old</u>

To the extent petitioner contends an LWOP sentence is an unconstitutional cruel and unusual punishment when imposed on *any* 21-year-old defendant, we observe our Supreme Court has essentially rejected that very argument in the context of the death penalty. In *People v. Flores* (2020) 9 Cal.5th 371, 429, the court acknowledged research that youths ages 18 to 21 share many of the same cognitive and developmental deficiencies as adolescents under age 18. Quoting from the court's earlier opinion in *People v. Powell* (2018) 6 Cal.5th 136, 192, the court nonetheless held that 18 is " 'the age at which the line for death eligibility ought to rest.' " If the Eighth Amendment does not prohibit a sentence of death for 21 year olds, then most assuredly, it does not prohibit the lesser LWOP sentence.[8]

---

[8]    Our colleagues in Division Seven recently reaffirmed the constitutionality of the line drawn at 18 years old in *Montelongo, supra,* ___ Cal.App.5th ___ [2020 WL 6074456]. There, the 18-year-old defendant challenged his LWOP sentence as cruel and unusual punishment. In rejecting the defendant's argument, the court stated, "Unless and until the United States Supreme Court, the California Supreme Court, the Legislature, or the voters by initiative change the law, we are bound to apply it." (*Id.* at \*8.)

## III.
## DISPOSITION

The petition for writ of habeas corpus is denied.


                                        RUBIN, P. J.

I CONCUR:



     MOOR, J.

In re Michael Williams
B303744


BAKER, J., Concurring


I agree the opinion for the court reaches the correct result, and I agree with the core of the rationale that leads to that outcome. I write separately to explain I find it unnecessary to opine on, and do not now opine on, two points discussed in the court's opinion: (1) whether youth offenders sentenced to life without parole and those sentenced to parole eligible life terms are similarly situated with respect to their potential for growth and rehabilitation, and (2) the merits of the views expressed by the concurring justice in *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1035 (conc. opn. of Segal, J.).


BAKER, J.